UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PORT OF SEATTLE, et al.,<br><br>Plaintiffs,<br>v.<br><br>TODD BLANCHE in his official capacity as Attorney General of the United States, et al.,<br><br>Defendants. | No. 2:26-cv-03301-BJR<br><br>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

II. STATEMENT OF FACTS ......................................................................................2

III. ARGUMENT .........................................................................................................6

A. Legal Standard ............................................................................................ 6

B. The Local Governments Are Likely to Succeed on the Merits. ............................ 6

1. Imposing the Challenged Conditions Violates the APA............................ 6

a.) The Conditions exceed statutory authority and violate the separation of powers. ....................................................6

b.) The Conditions violate the Spending Clause. ...............................10

c.) The Conditions are arbitrary and capricious. ................................13

2. The Challenged Conditions Independently Violate Separation of Powers and the Spending Clause....................................... 14

C. The Local Governments Will Suffer Irreparable Harm If the Conditions Are Not Enjoined.............................................................................. 14

D. The Equities Weigh in the Local Governments' Favor. ...................................... 15

IV. CONCLUSION .......................................................................................................15




PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I. INTRODUCTION

Defendants the U.S. Department of Justice ("DOJ"), the U.S. Department of Homeland Security ("DHS"), the Federal Emergency Management Agency ("FEMA"), the U.S. Environmental Protection Agency ("EPA"), the U.S. Department of Commerce ("Commerce"), the U.S. Department of Agriculture ("USDA"), the U.S. Department of Energy ("DOE"), the U.S. Department of Labor ("DOL"), the U.S. Department of the Interior ("Interior"), the Office of National Drug Control Policy ("ONDCP"), and the Institute of Museum and Library Services ("IMLS") (collectively, the "Federal Agencies") seek to impose new, unlawful conditions on congressionally authorized federal grant funds that Plaintiffs Port of Seattle, King, Kitsap, Snohomish, and Thurston Counties, and the Cities of Bellingham and Bremerton (collectively, the "Local Governments") rely on for critical public programs and projects.

The new conditions (collectively, the "Challenged Conditions") would require the Local Governments to adopt the Administration's expansive reinterpretation of federal civil rights laws; refrain from "advanc[ing]" or "promot[ing]" diversity, equity, inclusion, and accessibility ("DEI" or "DEIA"), "gender ideology," or "elective abortion"; facilitate federal immigration enforcement; restrict support to "educational agencies" with COVID-19 vaccination requirements; restrict support for activities framing domestic violence or sexual assault as "systemic social justice" issues; comply with current and future executive orders ("EOs") unrelated to the grants; and accept termination whenever an award no longer serves the agency's shifting political priorities.

Congress did not authorize any of the Challenged Conditions. They violate the separation of powers and the Spending Clause, and are arbitrary and capricious under the Administrative Procedure Act ("APA"). The Local Governments face a classic Hobson's choice: accept unlawful conditions or forgo funding altogether. And they must choose now. Grant deadlines are



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

approaching and their budgets are scheduled for adoption by year end. Courts across the country—including this Court, in a ruling the Ninth Circuit largely affirmed—have enjoined the same or materially similar conditions. This Court should do the same here.

## II. STATEMENT OF FACTS

Since taking office, President Trump has pursued his domestic policy agenda through a relentless stream of EOs directing agency heads to impose new conditions on federal funding. These EOs include "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (the "DEI Order"); "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (the "Gender Ideology Order"); "Ending Taxpayer Subsidization of Open Borders," No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025); "Protecting American Communities From Criminal Aliens," No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025); and "Improving Oversight of Federal Grantmaking," No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025). *See* Dkt. #12 ¶¶ 288–98.

The Federal Agencies have implemented these EOs by changing their policies and attaching new grant conditions to funding on which the Local Governments rely for critical programs and priorities ranging from public safety to economic development to emergency response and more. Dkt. #12 ¶¶ 305–94; *see also* Dkt. #32, Exs. 1–41, 48–79. The Challenged Conditions are:[1]

**Discrimination Conditions.** Most of the Federal Agencies now require recipients to certify they that "do not, and will not, . . . operate **any programs** that advance or promote DEI,

[1] The Challenged Conditions vary slightly across the Federal Agencies' standard terms, notices of funding opportunities ("NOFO"), and grant agreements. Variations of the language at issue are set forth in full in the Appendix to the Proposed Preliminary Injunction.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws." *Id.*, Ex. 21 at 10 (DHS) (emphasis added); *see also id.*, Exs. 1–4, 40, 50, 56–57, 65–66. Another, DOL, initially directed recipients to cease all DEI and has now advised that DEI activities "risk violating federal civil rights laws referenced above and jeopardizing federal funding." *Id.*, Exs. 60, 64.

The Discrimination Conditions also require recipients to agree "compliance in all respects with all applicable Federal anti-discrimination laws is material to the [federal] government's payment decisions" for purposes of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*; Dkt. #32, Ex. 21 at 10 (DHS); *see also*, *e.g.*, *id.*, Exs. 1–4, 22–25, 29–32, 40, 50, 56–57.

Recipients have long agreed to use federal funds in compliance with Title VI of the Civil Rights Act of 1964, as enacted by Congress and interpreted by the courts.[2] The Discrimination Conditions go further. They reach all recipient programs, not just federally funded programs, and require recipients to certify compliance with undefined concepts, while reserving to the Federal Agencies power to decide if those concepts were violated (without regard to conflicting case law).

**Immigration Conditions.** The Federal Agencies have also begun to condition grant funding on a recipient's agreement to support the Administration's immigration policies, including conditions "related to coordination and cooperation" with federal immigration officials and requiring recipients to certify that they do not "operate any program that benefits illegal immigrants or incentivizes illegal immigration." *Id.*, Ex. 21 at 5–6, 10–11 (DHS); *see also*, *e.g.*, *id.*, Exs. 5, 11, 13, 50; Dkt. #22, Ex. B.

**Gender Ideology, Abortion, Social Justice, and COVID Conditions.** Multiple Federal Agencies have imposed conditions prohibiting the "promotion" of "gender ideology" (the "Gender Ideology Conditions") or "elective abortion" (the "Abortion Conditions"), restricting activities that

---

[2] *See, e.g.*, *id.*, Ex. 21 at 4–5, 9, 13; *see also id.*, Ex. 83.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

frame domestic violence or sexual assault as "systemic social justice" issues (the "Social Justice Condition"), or restricting "direct[] or indirect[]" support to an educational institution that requires COVID-19 vaccines (the "COVID Condition"). Dkt. #32, Exs. 5–6, 11, 13, 50; Dkt. #22, Ex. B. Each condition targets grant-funded activities' downstream effects, including ideas they "promot[e]" or institutions they may "indirectly" support.

**EO Conditions.** The Federal Agencies have also imposed conditions requiring recipients to "comply with the requirements and actions of Presidential Executive Orders related to grants," the full text of which are often incorporated by reference. Dkt. #32, Ex. 21 at 17 (DHS); *see also*, *e.g.*, *id.*, Exs. 5–6, 50, 67–70, 75; Dkt. #22, Ex. B. The incorporated EOs appear to include, among others, orders directing agencies to ensure federal funds do not "promote gender ideology," Gender Ideology Order § 3(g), and require recipients to certify they do not operate DEI programs that, in the Administration's view, violate federal civil rights laws, DEI Order § 3(b)(iv)(B).

**Termination Conditions.** Some of the Federal Agencies have adopted conditions that would allow them to terminate a federal award, in whole or in part, "[f]or convenience," including whenever they conclude an award "no longer advances agency priorities or the national interest." Dkt. #32, Exs. 21 at 15–16 (DHS), 39; *see also*, *e.g.*, *id.*, Dkt. #23, Exs. A–B. Others have adopted materially similar conditions that would allow termination where the agency changes the program's priorities midstream and determines the award will not achieve those updated priorities. *E.g.*, Dkt. #32, Ex. 22 at 47–48; *see also id.*, Exs. 23–28, 39. These Termination Conditions contain no meaningful standards governing the exercise of that authority.

The Challenged Conditions are not empty threats. The Administration has announced that it will use them to investigate recipients, withhold funding, and pursue civil and criminal penalties. *See, e.g.*, *id.*, Ex. 78 (May 2025 DOJ memo announcing "Civil Rights Fraud Initiative" that will



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"utilize" the FCA against funding recipients). It has also announced reinterpretations of civil rights law that depart from settled authority. *See, e.g.*, *id.*, Exs. 17 (July 2025 DOJ memo directing recipients to "affirm sex-based boundaries rooted in biological differences" to "ensure compliance with federal law"); 84 (February 2025 DOJ memo declaring that DEI policies "violate the text and spirit of our longstanding Federal civil-rights laws").

More recently, DOJ and other agencies have initiated investigations and withheld federal funding based on recipients' alleged DEI, gender identity, or immigration-related policies. *See*, *e.g.*, *id.*, Exs. 80 (DOJ letter opening Title VII investigation of City of Chicago based on Mayor's statements concerning senior staff's racial composition), 81 (similar concerning City of Austin's employment practices), 82 (similar concerning University of California's employment practices).

The Local Governments face imminent harm from the Challenged Conditions. They urgently need these federal funds for critical community programs. Snohomish County needs DOJ and ONDCP funding to improve public safety and combat drug trafficking, and DOE funding to provide weatherization services. Dkts. #22 ¶¶ 19–20; 25 ¶¶ 4–5. The City of Bellingham needs IMLS funds to provide library services. Dkt. #28 ¶ 7. The Port of Seattle needs Commerce funds to mitigate risks of sea level rise. Dkt. #15 ¶ 14. King County needs EPA and Interior funds to support environmental health. Dkt. #16 ¶ 12–14, 23–25. Kitsap County needs USDA funds for fresh, locally-grown food for low-income seniors, and DOL funds for training and career services. Dkt. #20 ¶¶ 22–26. The City of Bremerton needs DHS/FEMA funds to hire and train firefighters. Dkt. #30 ¶¶ 5–8. And Thurston County needs DHS/FEMA funds for emergency management staff. Dkt. #26 ¶¶ 6, 8. Without these funds, the Local Governments would have to delay or cancel critical projects, divert resources from other projects (if they can), and upend their budgets (which are scheduled for adoption by year end). *See* Section III.C, *infra*.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## III. ARGUMENT

### A. Legal Standard

A preliminary injunction is warranted where the movant shows (1) likely success on the merits; (2) likely irreparable harm; (3) the balance of equities tips in its favor; and (4) an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each factor favors the Local Governments.

### B. The Local Governments Are Likely to Succeed on the Merits.

#### 1. Imposing the Challenged Conditions Violates the APA.

The Ninth Circuit recently held that a coalition of local jurisdictions, including several of the Local Governments here, is likely to succeed in showing that the same or similar grant conditions, imposed by other federal agencies, are unlawful under the APA. *County of King v. Turner*, 189 F.4th 819, 826 (9th Cir. 2026). The Conditions here violate the APA on three independent grounds: they exceed statutory authority and violate the separation of powers, 5 U.S.C. § 706(2)(B)–(C); violate the Spending Clause, *id*. § 706(2)(B); and are arbitrary and capricious, *id*. § 706(2)(A).

##### a.) The Conditions exceed statutory authority and violate the separation of powers.

Agencies have "literally . . . no power to act" unless Congress has conferred that power. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). The power to attach grant conditions is "incident to the spending power," which is "exclusively committed to Congress." *Turner*, 189 F.4th at 828 (quoting *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018)) (cleaned up). The President likewise lacks "his own constitutional powers" to attach grant conditions to federal funding; absent congressional authorization, his power "is at its lowest ebb." *San Francisco*, 897 F.3d at 1233–34 (cleaned up).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Congress has not authorized conditions prohibiting DEI, requiring cooperation with aggressive immigration enforcement, excluding transgender people, restricting access to information about lawful abortions, restricting support to educational agencies with COVID-19 vaccination requirements, limiting activities framed as "systemic social justice," requiring adherence to unrelated EOs, or permitting termination for convenience. Indeed, Congress has directed funds toward objectives that, in many cases, conflict with these conditions. *See, e.g.*, 34 U.S.C. §§ 10446(e)(2)(D), 12291(a)(46) (directing the Attorney General to ensure states "recognize and meaningfully respond to the needs of underserved populations," including populations underserved "because of . . . sexual orientation, gender identity, [and] underserved racial and ethnic populations," among others); 42 U.S.C. § 5121(b)(7) (encouraging issuance of grants to state and local governments that will, among other things, "identify[] and improv[e] the climate and natural hazard resilience of vulnerable communities"); 34 U.S.C. § 10382(c)(11) (COPS grant applicants must "provide assurances that the applicant will, to the extent practicable, seek, recruit, and hire members of racial and ethnic minority groups and women"); *see also, e.g.*, Dkt. #12 ¶¶ 114–19. As *Turner* explained, "[t]he majority of the conditions far exceed the limited authority" Congress provided. 189 F.4th at 826.

The Discrimination Conditions exceed Title VI. The Local Governments do not challenge a requirement that federally funded programs must comply with Title VI as interpreted by the courts, a condition *Turner* saw "nothing wrong with," *Id.* at 830. But "[n]othing in the text of Title VI reaches **other** activities that grant recipients undertake." *Id.* (emphasis italicized in original). Thus, the Conditions' "efforts to extend to 'all programs' goes well beyond the mandate of Title VI." *Id*. Nor does Title VI empower agencies to bind recipients to the Executive's reinterpretations of federal law even where federally funded programs are at issue. "[I]t is emphatically the province



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and duty of the judicial department to say what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). As *Turner* put it, "it is for the courts to interpret [statutory] provisions and to apply the definition to the facts of a particular case." 189 F.4th at 831 (addressing FCA provision). The requested injunction tracks *Turner*: it leaves in place lawful Title VI certifications for funded programs and enjoins the Conditions only insofar as they reach programs paid for from other funds or require certification of Executive reinterpretations.

The Discrimination Conditions' FCA provisions also fail. Requiring recipients to agree in advance that a violation is material would "sidestep" the materiality requirement and "bolster the case for FCA liability," handing the government "a liability-based cudgel to wield whenever violations are alleged." *Id.* "[I]t is for Congress, not the Executive, to amend that statutory definition." *Id.*

The One Big Beautiful Bill Act does not save the Immigration Conditions. At most, it authorizes one condition—compliance with 8 U.S.C. § 1373—for one supplemental FY 2025 appropriation for two DOJ grant programs. *See* Pub. L. No. 119-21 § 100054(5), 139 Stat. 72, 390 (2025).[3] Section 1373 is narrow. It only bars restrictions on sharing information about "citizenship or immigration status." 8 U.S.C. § 1373(a). But the Immigration Conditions for those two programs go much further, requiring advance notice of release dates and warrantless access to interrogate detainees in local detention facilities. Dkts. #22, Ex. A; 27, Ex. A; 29, Ex. A. Section 1373 requires neither. Nor does it require broad cooperation in immigration enforcement. *See*

[3] "To be eligible to receive funds made available under this subsection, a State or local government shall be in full compliance, as determined by the Attorney General, with [8 U.S.C. § 1373]." *Id.* § 100054(5)(C). This provision applies to DOJ's Byrne JAG and COPS Programs. *Id.*; *see also* Dkt. #12 ¶¶ 97–104, 133–42 (describing those programs).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*United States v. California*, 921 F.3d 865, 891–93 (9th Cir. 2019). To the extent the Act lets the Attorney General determine compliance with or interpret Section 1373, it cannot displace the judiciary's interpretive role. *See Loper Bright*, 603 U.S. at 412–13; *Turner*, 189 F.4th at 831. Nor does such discretion allow the Attorney General to interpret Section 1373 to require the additional actions that the Immigration Conditions purport to impose.

Other Federal Agencies now require broad "cooperat[ion]" in enforcement of federal immigration law, bar recipients from "publiciz[ing] the existence of an immigration enforcement operation," bar "any program that benefits illegal immigrants" or provides "public resources to meet the needs of illegal immigrants," and bar recipients from being designated as "sanctuary jurisdiction[s]," among other requirements. Dkt. #32, Exs. 20–21, 50; Dkt. #15 ¶ 19, Ex. D at 8, 10; Dkt. #26, Ex. A at 42, 44. But when Congress authorizes a specific condition (e.g., Section 1373) for a specific appropriation for specific programs, it does not silently authorize broader conditions elsewhere.

The Abortion Conditions find no support in the Hyde Amendment. Most of the Federal Agencies are not subject to Hyde. *See Turner*, 189 F.4th at 837. Where Hyde applies, it bars using appropriated funds to "pay for an abortion," subject to exceptions. *See, e.g.*, Pub. L. No. 118-42, div. C, tit. II, §§ 202–204, 138 Stat. 25, 153 (Mar. 9, 2024) (DOJ). It does not bar recipients from "promot[ing]" abortion. Dkt. #22, Ex. B at 4. And an EO invoking Hyde "cannot direct [an agency] to impose conditions" barring "promotion" of abortion "in the absence of statutory authorization." *Turner*, 189 F.4th at 837.

Nor has Congress authorized the Federal Agencies to terminate grants for "convenience," after a post-award change in priorities, or whenever an agency decides an award no longer serves "the national interest." *See Metro. Transp. Auth. v. Duffy*, No. 25-cv-1413 (LJL), 2026 WL



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

588117, at *56–58 (S.D.N.Y. Mar. 3, 2026), *appeal docketed*, No. 26-1213 (2d Cir. May 1, 2026). The Termination Conditions let the Federal Agencies substitute their shifting priorities for the objectives Congress funded, an unlawful impoundment of appropriated funds by another name.

Because no statute authorizes the Challenged Conditions, they are in excess of statutory authority and violate the separation of powers. 5 U.S.C. § 706(2)(B)–(C).

**b.) The Conditions violate the Spending Clause.**

The Spending Clause's limits "apply to agency-drawn conditions on grants to . . . localities just as they do to conditions Congress directly places on grants." *County of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1030 (N.D. Cal. 2025) (quoting *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019)). Two limits matter here: conditions must be unambiguous, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), and they must relate "to the federal interest in particular national projects or programs," *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (citation omitted). The Challenged Conditions fail both. *See City of Fresno v. Mullin*, No. 26-cv-01535-WHO, 2026 WL 1998576, at *23–27 (N.D. Cal. July 9, 2026), *appeal docketed sub nom. City of Fresno v. Noem*, No. 26-5801 (9th Cir. Sep. 4, 2026).

**Ambiguity.** "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. The Challenged Conditions are so vague, ambiguous, and open-ended that recipients cannot determine what conduct is prohibited or when an agency may terminate their grants. The Discrimination Condition illustrates the problem. It fails to provide clear standards of conduct or standards for enforcement. It does not define "DEI" or "DEIA" beyond spelling out the acronyms. Nor does it define what it means to "advance" or "promote" DEI, DEIA, or "discriminatory equity ideology." Courts considering materially similar conditions have repeatedly concluded these terms are too vague to provide meaningful notice of



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

what grant recipients may or may not do. *See, e.g.*, *Nat'l Educ. Ass'n v. United States Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025) ("DEI as a concept is broad: one can imagine a wide range of viewpoints on what the values of diversity, equity, and inclusion mean when describing a program or practice."); *S.F. Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 746, 749 (N.D. Cal. 2025) ("DEI" and "equity" restrictions "are rife with vagueness and ambiguity" and "are likely too ill-defined to be enforced"); *see also Fresno*, 2026 WL 1998576, at *24; *City of Salem v. Mullin*, No. 6:26-cv-01340-MC, 2026 WL 2445474, at *9–10 (D. Or. Aug. 20, 2026), *appeal docketed*, No. 26-6746 (9th Cir. Oct. 14, 2026).

The Discrimination Conditions are particularly unclear because they prohibit "programs that advance or promote DEI, DEIA, or discriminatory equity ideology **in violation of Federal anti-discrimination laws**." *See, e.g.*, Dkt. #32, Exs. 20–21, 50 (emphasis added). Does this language mean that all DEI programs are unlawful? If not, how should recipients account for the Administration's shifting reinterpretation of civil rights statutes? *See Fresno*, 2026 WL 1998576, at *24 (DEI conditions "provide no meaningful guidance on how a grantee could comply with the Executive's changing interpretation of federal anti-discrimination law").

The uncertainty only deepened when DOJ in July 2025 issued "guidance" purporting to "clarif[y]" civil rights law that actually conflicts it. Dkt. #32, Ex. 17 at 1. For example, the guidance states that facially neutral criteria such as "cultural competence," "lived experience," or "geographic targeting" may violate federal law if intended to advantage or disadvantage protected groups. *Id.* at 2. But courts have "consistently" rejected the proposition that facially neutral criteria become unlawful simply because they correlate with race—even where the decision-maker was "well aware" of that correlation. *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing, *inter alia*, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys.*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Project, Inc.*, 576 U.S. 519, 545 (2015)); *see also, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (not all discussions of how race affects a person's life, "be it through discrimination, inspiration, or otherwise," are unlawful).

The consequences of guessing wrong are severe. As noted, the Discrimination Conditions force recipients to concede that compliance is "material" for FCA purposes, exposing recipients to treble damages and substantial civil penalties. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5(a). Plaintiff Bremerton, for example, received approximately $15 million in federal grant funding in FY 2025—over 6% of its annual budget. Dkt. #31 ¶ 4. By requiring recipients to concede materiality in advance, the Conditions attempt to relieve the federal government of proving an essential element of FCA liability, while exposing recipients to extraordinary penalties for conduct that courts have not held unlawful. *See Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 192 (2016); *see also Fresno*, 2026 WL 1998576, at *25 (FCA liability "heightens the constitutional infirmities associated with the [anti-DEI] conditions' ambiguity" (cleaned up)).

The other Challenged Conditions are just as vague. The Immigration Conditions demand undefined "cooperat[ion]" and bar undefined programs that "benefit illegal immigrants." The Gender Ideology, Abortion, Social Justice, and COVID Conditions turn on undefined terms such as "promot[ion]," "indirect support," "gender ideology," "elective abortion," and "social justice." The EO Conditions require "compliance" with current and future EOs that are addressed to federal agencies, not grant recipients, leaving recipients to guess what compliance means. And the Termination Conditions let agencies cancel grants based on undefined, post-hoc policy changes. *See Salem*, 2026 WL 2445474, at *11.

**Relatedness.** The Conditions also bear no relation to the programs they burden. *Dole*, 483 U.S. at 207. The authorizing statutes fund public safety, emergency preparedness and recovery,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

infrastructure, economic development, food security, environmental health, and more. *See* Dkt. #12 ¶¶ 154, 187, 209–11, 225–26. None of the Conditions advance those objectives. Instead, they regulate recipients' unrelated policies on DEI, immigration enforcement, gender identity, abortion, social justice, and COVID-19 vaccination. *See City & County of San Francisco v. Trump*, 782 F. Supp. 3d 830, 836 (N.D. Cal. 2025) (funding categories like "healthcare, transportation, emergency relief and so forth" have "little or nothing to do with sanctuary policies"). To the contrary, conditions that restrict equity-focused programs conflict with Congress's directives to ensure equitable access and prioritize vulnerable communities in carrying out several of these programs. *See, e.g.*, *Santa Clara*, 815 F. Supp. 3d at 1027 (recognizing certain DHS grant programs' "goal in educating 'particularly vulnerable' populations about fire safety"); *Fresno*, 2026 WL 1998576, at *21–23, *26–27. And the Termination Conditions run counter to an important pillar of many federal grant programs—"providing **orderly** and **reliable** funding to states and local governments." *Salem*, 2026 WL 2445474, at *12 (emphasis italicized in original).

**c.) The Conditions are arbitrary and capricious.**

Agency action must be "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up). An agency must offer "a satisfactory explanation for its action," rather than rely on "factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency changing its policy must acknowledge the change, give "good reasons," and account for reliance interests. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The Federal Agencies offered no reasoned explanation for imposing conditions unrelated to the funded programs, departing from statutory and regulatory requirements, or upsetting settled reliance interests. Rote incorporation of EOs is not an explanation. The Discrimination Conditions



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

are especially unreasoned: they appear to bar any DEI program, federally funded or not, although Congress has directed several programs to ensure equitable access. *See* Dkt. #12 ¶¶ 114–19.

**2. The Challenged Conditions Independently Violate Separation of Powers and the Spending Clause.**

The separation of powers and Spending Clause violations also stand as independent claims, *see San Francisco*, 897 F.3d at 1231–35; *Los Angeles*, 929 F.3d at 1176, and succeed for the reasons set forth in Sections III.B.1.a and III.B.1.b.

**C. The Local Governments Will Suffer Irreparable Harm If the Conditions Are Not Enjoined.**

The Local Governments face impending deadlines as early as December 2026 to accept unlawful conditions or risk losing federal funds. *See, e.g.*, Dkt. #22 ¶ 18. That is "a classic Hobson's choice: sustain unrecoverable losses to comply with the government's conditions, or refuse to submit, and risk losing the grant funds in their entirety." *Turner*, 189 F.4th at 839. The "double bind constitutes irreparable harm" and it "particularly impacts vulnerable populations, critical programs, and ongoing services." *Id.*; *see also Salem*, 2026 WL 2445474, at *13; *Fresno*, 2026 WL 1998576, at *36; *Santa Clara*, 815 F. Supp. 3d at 1041; *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *19 (N.D. Cal. Sept. 23, 2025), *appeal docketed*, No. 25-7378 (9th Cir. Nov. 24, 2025).

Loss of the funds at issue would result in immediate, irreparable, and reverberating harms to the Local Governments, including upending their budgets, *e.g.*, Dkt. #16 ¶¶ 4, 33; Dkt. #22 ¶ 20; potentially forcing reductions in their workforce or loss of staff needed to maintain and improve infrastructure, *e.g.*, Dkt. #26 ¶¶ 12–13; Dkt. #18 ¶ 10; cutting off critical public safety services and infrastructure projects, thus putting the public at risk, *e.g.*, Dkt. #30 ¶ 8; Dkt. #17 ¶¶ 18–19; Dkt.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

#22 ¶ 20; Dkt. #23 ¶¶ 14–15; Dkt. #24 ¶¶ 8, 16–19; Dkt. #15 ¶¶ 7, 14; and forcing them to divert resources from other public services, *e.g.*, Dkt. #19 ¶¶ 23, 26; Dkt. #16 ¶¶ 30; Dkt. #29 ¶ 9.

The uncertainty alone forces the Local Governments to divert resources and plan around the possible loss of funds. *E.g.*, Dkt. #31 ¶¶ 7–9; Dkt. #16 ¶ 33; Dkt. #27 ¶¶ 15–16. Many federally funded projects take years to plan. Dkt. #23 ¶¶ 4, 12; Dkt. #25 ¶ 15. Without these funds, some may become too expensive to undertake, requiring modification or cancellation. *E.g.*, Dkt. #15 ¶ 14; Dkt. #28 ¶ 7; Dkt. #22 ¶ 19.

### D. The Equities Weigh in the Local Governments' Favor.

The balance of equities tips "sharply" in the Local Governments' favor. *Turner*, 189 F.4th at 840. The threatened harm to them far outweighs any federal interest in imposing the conditions immediately. *Id.* And "agency action taken in excess of statutory authority runs counter to the public interest, which is served by compliance with the APA." *Id.* (quotation omitted); *see also* *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

## IV. CONCLUSION

The Court should grant this Motion and preliminarily enjoin the Federal Agencies, during the pendency of this action, from imposing on any of the Local Governments the Challenged Conditions identified in the Appendix to the Proposed Order. Counsel for the Local Governments certify the parties have conferred but have not been able to reach agreement.

DATED this 16th day of October, 2026.

PACIFICA LAW GROUP LLP

*s/Jamie Lisagor*
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Sarah Du, WSBA #63807
Luther Reed-Caulkins, WSBA #62513
Carly Zipper, WSBA #60598

*Attorneys for Plaintiffs*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750